**DAKCOLL INC., a North Dakota corporation, Plaintiffs,**

v.

**GRAND CENTRAL GRAPHICS, INC., d/b/a Grand Slam Designs, and Barbara Geer, Defendants.**

**Case No. A1–04–126.**

United States District Court, D. North Dakota, Southwestern Division.

Jan. 20, 2005.

Timothy J. Austin, Bismarck, ND, for Plaintiff.

Tracy A. Kennedy, Zimney Foster, Johnson Dittus & Flaten, Grand Forks, ND, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AS TO DEFENDANT BARBARA GEER

HOVLAND, Chief Judge.

Before the Court is the Defendants' Motion to Dismiss[1] filed on November 16, 2004. The Plaintiffs filed a response opposing the motion on December 13, 2004. For the reasons outlined below, the motion is granted as to defendant Barbara Geer.

---

1. The Defendants characterized their motion as a Motion to Dismiss as well as a Motion for Judgment on the Pleadings. For purposes of this order, the Court will consider the pending motion a Motion to Dismiss.

## I. *BACKGROUND*

The plaintiff, DakColl Inc. d/b/a Dakota Collectibles ("Dakota Collectibles") is a North Dakota corporation with its principal place of business in Bismarck, North Dakota. The defendant, Grand Central Graphics, Inc., is a Minnesota corporation with its principal place of business in Middle River, Minnesota. Grand Central Graphics is the parent company of, .and doing business as, Grand Slam Designs, which also operates out of Minnesota (both will be hereinafter referred to as "Grand Central Graphics"). Both companies are directed by, and are under the control of, defendant Barbara Geer. *See* Complaint, ¶¶ 5–6.

Dakota Collectibles has created artwork in which it owns all copyrights, consisting of designs and patterns used for embroidery purposes. Dakota Collectibles submitted twelve such designs which it has attached and marked as "Exhibit B" to its pleadings. All of the artwork is copyrightable subject matter under the laws of the United States as it is material wholly original with Dakota Collectibles. Dakota Collectibles has registered each of the copyrightable designs as required under federal law making Dakota Collectibles the sole owner of the exclusive rights and privileges to the copyrights. *See* Complaint, ¶¶ 7–10.

On October 12, 2004, Dakota Collectibles filed an action alleging that the Defendants infringed on its copyrights for embroidery designs, "by copying, distributing, marketing, and/or causing, facilitating, and otherwise contributing to the copying, distributing, and marketing of such embroidery designs." Complaint, ¶ 1. Dakota Collectibles is seeking money damages and permanent injunctive relief.

## II. · *LEGAL DISCUSSION*

The Defendants' have filed a Motion to Dismiss for lack of personal jurisdiction and ineffective service of process. In the alternative, the Defendants request a change of venue. The Court will address each in turn.

## A. *PERSONAL JURISDICTION*

The initial inquiry is whether the Court has personal jurisdiction over the Defendants. The Motion to Dismiss was filed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of jurisdiction over the party. "To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." *Epps v. Stewart Information Services Corp.*, 327 F.3d 642, 647 (8th Cir. 2003) (citing *Falkirk Min. Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 373 (8th Cir.1990); *Watlow Elec. Mfg. v. Patch Rubber Co.*, 838 F.2d 999, 1000 (8th Cir. 1988)). "The plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir.2004). The party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction. *Epps*, 327 F.3d 642, 647 (citations omitted).

"A federal court may assume jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution." *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir.1994) (citing *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1280 (8th Cir. 1991)). As a result, the personal jurisdiction inquiry involves two steps: (1) the court must determine whether the State of North Dakota would accept jurisdiction under the facts of this case; and (2) the court must determine whether the exercise

of jurisdiction comports with constitutional due process restrictions. *Lakin v. Prudential Securities, Inc.*, 348 F.3d 704, 706–707 (8th Cir.2003) (citing *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir. 1993)). To satisfy the first step of the jurisdictional analysis, the Court will address the relevant North Dakota provisions governing personal jurisdiction over non-resident defendants.

■ The jurisdiction of North Dakota courts is governed by the North Dakota long-arm statute set forth in Rule 4(b)(2) of the North Dakota Rules of Civil Procedure. The North Dakota Supreme Court has held that Rule 4(b)(2) "authorizes North Dakota courts to exercise jurisdiction over nonresident defendants to the fullest extent permitted by due process...." *Hansen v. Scott*, 645 N.W.2d 223, 230 (N.D.2002) (citing *Auction Effertz, Ltd. v. Schecher*, 611 N.W.2d 173 (N.D. 2000); *Hust v. Northern Log, Inc.*, 297 N.W.2d 429, 431 (N.D.1980)). The Eighth Circuit has held that when a state construes its long-arm statute to grant jurisdiction to the fullest extent permitted by the Constitution, the two-step analysis collapses into a single question of whether the exercise of personal jurisdiction comports with due process. *Oriental Trading Co., Inc. v. Firetti*, 236 F.3d 938, 943 (8th Cir.2001); *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir.1994); *see Hansen v. Scott*, 645 N.W.2d 223, 232 (N.D.2002).

The Eighth Circuit has explained the requirements of the due process clause as follows:

> Due process requires that there be sufficient "minimum contacts" between the nonresident defendant and the forum state such that the "maintenance of the suit does not offend the traditional notions of fair play and substantial justice." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Sufficient minimum contacts exist when the "defendant's conduct and connection with the forum state are such that he or she should reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. 559. In assessing the defendant's reasonable anticipation, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The " 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the 'unilateral activity of another party or a third person.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citations omitted). "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* (emphasis in original).

*Stanton v. St. Jude Medical, Inc.*, 340 F.3d 690, 693 (8th Cir.2003).

■■ There are two categories of minimum contacts with a state that may subject a defendant to jurisdiction in that forum, i.e., general and specific. With respect to general jurisdiction over a defendant, "a court may hear a lawsuit against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum." *Dever*, 380 F.3d 1070, 1073 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). A state has specific

jurisdiction over a defendant when the suit arises out of, or is related to, the defendant's contacts with the forum state.

Both categories of minimum contacts require some act by which the defendant purposely avails himself or herself of the privilege of conducting activities within the forum state, and thus invokes the benefits and protections of its laws. If a court determines that a defendant has minimum contacts with the forum state, the court must then consider " 'whether the assertion of personal jurisdiction would comport with fair play and substantial justice.' " *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

▬ The Eighth Circuit has established a five-part test for measuring minimum contacts for purposes of asserting personal jurisdiction over a defendant: (1) the nature and quality of [a defendant's] contacts with a forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5)[the] convenience of the parties. *Dever,* 380 F.3d 1070, 1073–74 (citing *Burlington Indus., Inc. v. Maples Indus., Inc.,* 97 F.3d 1100, 1102 (8th Cir.1996)). In determining whether a defendant has sufficient contacts with the forum state to exercise personal jurisdiction, the court must consider all of the contacts in the aggregate and examine the totality of the circumstances. *Northrup King Co. v. Compania Productora Semillas Algodoneras, S.A.,* 51 F.3d 1383, 1388 (8th Cir.1995). The Eighth Circuit affords "significant weight" to the first three factors. When a court is faced with multiple defendants, each defendant's contacts with the forum state must be assessed individually. *Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

In the complaint, Dakota Collectibles sets forth several alleged contacts that Grand Central Graphics has with North Dakota:

a.) Defendants regularly promote and sell their goods, in interstate commerce, nationwide, through the use of a website and catalogs;

b.) The website, which contains the infringing designs described herein, is accessible in this district and division;

c.) Defendants sell their catalogs, including catalogs which display the infringing designs, in this district and this division;

d.) Defendants have sold the infringing designs to customers located within this district and this division; and

e.) Defendants' customers, located within this district and this division, have purchased and used software, supplied by the Defendants, to make an unknown quantity of Plaintiff's copyrighted embroidered designs, which designs are infringing copies made and sold in this district and this division.

Complaint, ¶ 3. As for Barbara Geer, the complaint merely asserts that Grand Central Graphics and Grand Slam Designs are directed by, and under her control. No further information is provided about any contacts she may have with North Dakota.

Dakota Collectibles has limited its discussion to specific jurisdiction. As previously noted, specific jurisdiction requires that the cause of action arise out of or be related to the defendants' contacts with the forum state. *Epps v. Stewart Information Services Corp.,* 327 F.3d 642, 648 (8th Cir.2003). The Court will analyze each of Grand Central Graphics' and Barbara Geer's contacts in relation to the claims being asserted and the factors prescribed by the Eighth Circuit.

### 1. *GRAND CENTRAL GRAPHICS*

The first factor to be considered is the nature and quality of Grand Central Graphics' contacts with North Dakota. Under this factor, the primary issue is whether the non-resident defendants "have fair warning that a particular activity may subject a person to the jurisdiction of a foreign sovereignty." *Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 576 (8th Cir. 1992) (citing *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)). The fair warning requirement will be satisfied if the defendant has "purposefully directed" his or her activities at the residents of the forum state. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

### a) *THE WEBSITE*

■ Dakota Collectibles primarily argues that Grand Central Graphics' Web site [2] provides this Court with specific jurisdiction. Many courts have examined jurisdictional issues involving the Internet and how electronic contacts affect the exercise of personal jurisdiction. *See* Richard E. Kaye, Annotation, *Internet Web site activities of nonresident person or corporation as conferring personal jurisdiction under long–Arm statutes and due process clause*, 81 A.L.R.5th 41, 2000 WL 1291000 (2003). In *Lakin v. Prudential Securities, Inc.*, 348 F.3d 704 (8th Cir.2003), the Eighth Circuit discussed whether and how a Web site could provide minimum contacts to invoke personal jurisdiction. The Court recognized that a majority of courts which have addressed the issue have adopted the analytical framework set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997). The Eighth Circuit quoted *Zippo* and stated "that the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Lakin*, 348 F.3d 704, 710 (quoting *Zippo*, 952 F.Supp. 1119, 1124). The federal court in *Zippo* created a "sliding scale" test to measure the nature and quality of the commercial contacts for assessing the exercise of personal jurisdiction. The Eighth Circuit restated a portion of the *Zippo* court's holding that described the "sliding scale" concept:

> At one end of the spectrum are situations where the defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Lakin*, 348 F.3d 704, 710–11 (quoting *Zippo*, 952 F.Supp. 1119, 1124) (emphasis add-

---

**2.** As quoted in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa. 1997), "[a] 'site' is an Internet address that permits the exchange of information with a host computer. *Bensusan Restaurant Corp. v. King*, 937 F.Supp. 295 (S.D.N.Y.1996). The 'Web' or 'World Wide Web' refers to the collection of sites available on the Internet."

ed). The Eighth Circuit concluded that the "sliding scale" approach was appropriate in cases of specific jurisdiction.[3] The Court must determine where Grand Central Graphics' Web site falls on the "sliding scale" spectrum.

It is undisputed that Grand Central Graphics conducts online business via its Web site. It appears that the Grand Central Graphics Web site has a very high level of interactivity. The Web solicits users to purchase goods, allows users to browse through designs, and place orders via the Internet. Via its Web site, Grand Central Graphics has entered into contracts with individuals outside of Minnesota. A plain reading of *Zippo* reveals that personal jurisdiction is proper when a defendant "clearly does business over the Internet." In light of the holding in *Lakin*, such an approach is binding upon the district courts of the Eighth Circuit.

### b). *BUSINESS DEALINGS*

In addition to the Web site, it is undisputed that Grand Central Graphics has distributed its catalogs which contain allegedly infringing designs to North Dakota residents, and in fact sold such designs to North Dakota residents.

### c). *THE CALDER "EFFECTS TEST"*

The "effects test" was recognized in the United States Supreme Court case of *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) and may provide an additional basis for exercising personal jurisdiction. In *Calder,* a California entertainer brought a libel action against Florida residents who were writers and editors of the National Enquirer, a Florida-based weekly newspaper with a nationwide circulation. The Supreme Court held that California could assert jurisdiction over the non-resident defendants because the defendants' intentional actions were aimed at California, they knew the allegedly libelous articles "would have a potentially devastating impact" on the plaintiff, and they knew the "brunt of the harm" would be suffered in California. Based on those facts, the Supreme Court concluded the defendants could "reasonably anticipate being haled into court" in California. 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

The Eighth Circuit has recognized the "effects test" as articulated in *Calder v. Jones. See General Electric Capital Corp. v. Grossman,* 991 F.2d 1376, 1387 (8th Cir.1993); *Hicklin Engineering, Inc. v. Aidco, Inc.,* 959 F.2d 738, 739 (8th Cir. 1992); *Dakota Indus., Inc., v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1390–91 (8th Cir.1991). However, the Eighth Circuit has used the "effects test" as merely an additional factor to consider when eval-

---

**3.** The holding in *Lakin* marked the addition of the Eighth Circuit to a growing number of Circuit Courts of Appeal that have adopted either the same or a similar standard as articulated in *Zippo* for purposes of specific jurisdiction. *See Lakin v. Prudential Securities, Inc.,* 348 F.3d 704 (8th Cir.2003); *Gator.com Corp. v. L.L. Bean,* Inc., 341 F.3d 1072 (9th Cir.2003); *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446 (3d Cir.2003); *Revell v. Lidov,* 317 F.3d 467 (5th Cir.2002); *ALS Scan, Inc. v. Digital Serv. Consult., Inc.,* 293 F.3d 707 (4th Cir.2002); *Young v. New Haven Advocate,* 315 F.3d 256 (4th Cir.2002); *Gorman v. Ameritrade Holding Corp.,* 293 F.3d 506 (D.C.Cir. 2002); *GTE New Media Serv. Inc. v. BellSouth Corp.,* 199 F.3d 1343 (D.C.Cir.2000); *Soma Medical Intern. v. Standard Chartered Bank,* 196 F.3d 1292 (10th Cir.1999); *Mink v. AAAA Development LLC,* 190 F.3d 333 (5th Cir. 1999); *Bensusan Rest. Corp. v. King,* 126 F.3d 25 (2d Cir.1997); *Cybersell, Inc., v. Cybersell, Inc.,* 130 F.3d 414 (9th Cir.1997); *CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996).

uating a defendant's relevant contacts with the forum state. *See Hicklin Engineering, Inc. v. Aidco, Inc.,* 959 F.2d 738, 739 (8th Cir.1992) (holding that although the defendants' alleged harmful activities may have harmed the plaintiff in the state of Iowa, "absent additional contacts, this effect alone will not be sufficient to bestow personal jurisdiction."); *Dakota Indus., Inc., v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1390–91 (8th Cir.1991) (stating that "[i]n relying on *Calder,* we do not abandon the five-part test. . . ." We simply note that *Calder* requires the consideration of additional factors when an intentional tort is alleged).

It is well-established that the "effects test" may be utilized outside the realm of defamation actions, and it often appears in intellectual property rights cases such as patent, trademark, and copyright infringement. Most notably, the Eighth Circuit has applied the "effects test" in such cases. In *Dakota Indus., Inc., v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1390–91 (8th Cir.1991), a trademark infringement case, the Eighth Circuit relied on the "effects test" in holding that personal jurisdiction was permissible over a non-resident defendant whose sportswear bearing a trademark infringing label was ultimately sold in the forum state. The Defendant argued that it had no contacts with the forum state of South Dakota, and that "the marketing of its products in [South Dakota] resulted solely from the unilateral actions of others." *Id.* at 1390.

The Court rejected this argument, citing *Calder.* The Eighth Circuit explained that "[l]ike in *Calder,* this case involves intentional tortious wrongdoing—namely, the use of the trademark with knowledge of the infringement." *Id.* at 1391. Evidence showed that the Defendant had known of a possible violation by way of telephone calls and a "cease and desist" letter from the Plaintiff. This evidence supported the proposition that the Defendant "knowingly and intentionally infringed on the trademark." *Id.* The Court also found it significant that the Plaintiff's principal place of business was in South Dakota, and there was "at least some suggestion" that the Defendant had shipped goods directly to South Dakota. This further demonstrated that the Defendant's actions were aimed at South Dakota and "that the 'brunt' of the injury would be felt there." *Id.* As a result, the Eighth Circuit concluded that under the circumstances the Defendant "must reasonably anticipate being haled into court in South Dakota." *Id.* at 1391 (citing *Calder,* 465 U.S. 783, 790, 104 S.Ct. 1482); *see also Mulcahy v. Cheetah Learning LLC,* No. CIV. 02–791, 2002 WL 31053211 (D.Minn. Sept. 4, 2002) (holding that "[i]n light of [the Plaintiff's] allegation that [the Defendant] intentionally infringed on her copyright and knew that [the Plaintiff] was a resident of Minnesota, the effects test bolsters the Courts finding that [the Defendant] has purposefully directed its activities at Minnesota such that the exercise of personal jurisdiction is proper."); *Ballistic Products, Inc. v. Precision Reloading, Inc.,* No. Civ. 03–2950, 2003 WL 21754816 (D.Minn. July 28, 2003) (holding similarly).

Similar facts appear in the present case. As in *Dakota Sportswear,* Grand Central Graphics was put on notice of possible copyright violations via a "cease and desist" letter sent by Dakota Collectibles on June 11, 2004. *See* Plaintiff's Ex. "D." In the letter, Dakota Collectibles indicates that it is a company based in Bismarck, North Dakota, and alleges that several of Grand Central Graphics' designs appear to infringe upon its copyrights. The letter warned that "[i]f prompt and, where necessary, immediate attention is not provided, Dakota Collectibles will take whatever legal action it deems appropriate." *Id.* While the Defendants responded to the

letter, Grand Central Graphics did not cease and desist publication of the designs as requested. As a result, Dakota Collectibles sent a second letter on June 29, 2004. Again, Dakota Collectibles demanded that Grand Central Graphics immediately cease and desist. *Id.* The June 29th letter also indicated that the attorneys for both parties had discussed the matter, reading "[d]uring our discussion on the 15th, I made it very clear your client must cease and desist all publication of our designs." *Id.*

In applying the "effects test" as articulated in *Calder* and applied by *Dakota Sportswear,* the Court finds that there is evidence to support the Plaintiff's assertion that Grand Central Graphics "knowingly and intentionally infringed on the [copyrights]." *Dakota Indus., Inc., v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1391. Grand Central Graphics was given ample warning from Dakota Collectibles and took no action to cease and desist. After receiving the letters, any further action on its part cannot be characterized as being done without knowledge. The evidence also indicates that Grand Central Graphics knew the brunt of the injury would be felt in North Dakota, because it was told in the letters that Dakota Collectibles was a company based in Bismarck, North Dakota. Also, unlike *Dakota Sportswear,* where the Eighth Circuit was swayed by the mere suggestion that the Defendant had shipped goods to the forum state, in this case it is undisputed that Grand Central Graphics has shipped goods to North Dakota in the form of catalogs and designs to customers. Grand Central Graphics must reasonably anticipate being haled into court in North Dakota because it was specifically told that by Dakota Collectibles in the letters by threatening litigation. In summary, the Court is satisfied that the requirements of the "effects test" as enumerated in *Calder v. Jones* have been met.

Based on the aforementioned contacts between Grand Central Graphics and North Dakota, this factor regarding the nature and quality of the contacts weighs strongly in favor of the exercise of personal jurisdiction.

 The second factor prescribed by the Eighth Circuit is the quantity of contacts. It is well-established that specific jurisdiction can arise from a single contact with the forum state. *Fulton v. Chicago, Rock Island & P.R. Co.,* 481 F.2d 326, 334–36 (8th Cir.1973). However, when specific jurisdiction is being alleged the quantity of contacts is not determinative. *West Publishing Co. v. Stanley,* No. Civ. 03–5832 (JRT/FLN), 2004 WL 73590, *4 (D.Minn. Jan.7, 2004); (citing *Marquette Nat'l Bank of Minneapolis v. Norris,* 270 N.W.2d 290, 295 (Minn.1978); *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Marshall v. Inn of Madeline Island,* 610 N.W.2d 670, 674 (Minn.Ct.App.2000)). Thus, the Court is not concerned with the number of contacts made for purposes of whether specific jurisdiction exists over Grand Central Graphics.

The third factor is the relation of the cause of action to the contacts. The Court recognizes that all of the Grand Central Graphics' contacts with North Dakota are related to Dakota Collectibles claims of infringement. The facts indicate that Grand Central Graphics sold allegedly infringing designs to customers in North Dakota via the Web site or catalogs. In turn, it is alleged that those customers made unknown quantities of Dakota Collectibles copyrighted designs. The contacts which the Court outlined above, are directly related the Dakota Collectibles claims of copyright infringement. This factors weighs in favor of the exercise of personal jurisdiction.

It is well-established in the Eighth Circuit that the first three factors as outlined

above are of "primary importance," and the last two factors are of "secondary importance." *Stanton v. St. Jude Medical, Inc.,* 340 F.3d 690, 694 (8th Cir.2003); *Northrup King Co. v. Compania Productora Semillas Algodoneras,* 51 F.3d 1383, 1388 (8th Cir.1995); *Aaron Ferer & Sons Co. v. American Compressed Steel Co.,* 564 F.2d 1206, 1210 n. 5 (8th Cir.1977). The interest of the forum state is the fourth factor to be considered for purposes of exercising personal jurisdiction.

 It stands to reason that North Dakota has an interest in adjudicating these claims and providing a forum for its residents. Therefore, the fourth factor weighs in favor of the exercise of personal jurisdiction. *See Aylward v. Fleet Bank,* 122 F.3d 616, 618 (8th Cir.1997) (quickly dispensing with this part of the test by assuming the forum state has an interest in providing a forum for its residents).

The fifth and final factor to be considered is the convenience of the parties. The Eighth Circuit has recognized that a plaintiff is normally entitled to choose the forum in which to litigate a case. *Northrup King Co. v. Compania Productora Semillas Algodoneras,* 51 F.3d 1383, 1389 (8th Cir.1995). The Court understands that potential fact witnesses are located outside North Dakota. However, many of the witnesses will reside in North Dakota. The Court finds that this factor does not favor either party.

Based on its contacts with North Dakota and the totality of the circumstances, the Court expressly finds that exercising jurisdiction over Grand Central Graphics comports with due process. *See Northwest Airlines, Inc. v. Astraea Aviation Services, Inc.,* 111 F.3d 1386, 1390 (8th Cir.

1997). The exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice.

### 2. *BARBARA GEER*

 Dakota Collectibles contends that the Court may exercise personal jurisdiction over Barbara Geer pursuant to 28 U.S.C. § 1367. The Defendants correctly note that Dakota Collectibles is "confusing personal jurisdiction with subject matter jurisdiction...." Defendant's Reply Brief, p. 3. 28 U.S.C. § 1367 merely allows factually related state law claims to be joined with claims over which the federal district court has original subject matter jurisdiction. *See Motion Control Corp. v. SICK, Inc.,* 354 F.3d 702, 705 (8th Cir.2003); *Lindsey v. Dillard's, Inc.,* 306 F.3d 596 (8th Cir.2002). It does not provide the Court with an independent basis for the assertion of personal jurisdiction. The Court must still find sufficient contacts between Barbara Geer and North Dakota to satisfy the due process clause.

 As previously noted, the only information provided to the Court about Barbara Geer is that Grand Central Graphics is directed by and under her control. *See* Complaint, ¶ 6. It is unclear from the pleadings as to what Geer's official capacity is with respect to each company. The Court finds that Dakota Collectibles cannot establish a prima facie showing of personal jurisdiction as to Barbara Geer.

### B. *INSUFFICIENCY OF PROCESS*

 The Defendants also seek dismissal under Rule 12(b)(4) and (5) of the Federal Rules of Civil Procedure for insufficiency of process and insufficiency of service of process.[4] The Defendants

---

4. The distinction between Rule 12(b)(4) and 12(b)(5) is not always clear, nor always observed. The difference between the two rules has been explained as follows:

An objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service. Technically, therefore, a rule 12(b)(4) motion is

merely state that "Plaintiff's claim must fail for insufficiency of process and insufficiency of service of process under Rule 4.2(C)" of the local rules which reads as follows:

> In petitioning this court for an order permitting service upon persons residing outside of the District of North Dakota, the petitioner must state the authority upon which the petition for such service is based and submit a proposed order.

N.D. Ct. R. 4.2(C). The current version of Rule 4 of the Federal Rules of Civil Procedure no longer requires such a petition to be filed with the Court. Therefore, Local Rule 4.2(C) is inapplicable.[5] Further, it appears the Defendants may have abandoned this theory of relief because it does not appear in either their Brief in Support of Rule 12 Motion to Dismiss or in their Reply to the Court.

### C. *VENUE*

Finally, the Defendants contend that this case should be dismissed, or alternatively transferred, because it is improperly venued under 28 U.S.C. § 1391(b) which provides as follows:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). Additionally, 28 U.S.C. § 1391(c) applies if the defendant is a corporation, and it reads in relevant part as follows:

> For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

28 U.S.C. § 1391(c).

■ A plain reading of the rule reveals that 28 U.S.C. § 1391(b)(1) provides a basis for venue in North Dakota. The sole remaining defendant is Grand Central Graphics d/b/a Grand Slam Designs. 28 U.S.C. § 1391(c) provides that a corporation resides in any district where it is subject to personal jurisdiction. Grand Central Graphics is subject to personal jurisdiction in North Dakota based on its contacts with the State. As a result, venue in North Dakota is proper.

In the alternative, the Defendants request that venue be transferred to Minnesota. "[Section 1404(a)] assumes that venue is proper in the court where the action is initially filed, and also that the court has jurisdiction over the person of the defen-

---

proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons. A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or lack of delivery of the summons and complaint.
5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1353, pp. 334–35 (3d Ed.2004). Due to difficulties that arise when trying to distinguish the two rules

"[s]everal courts have . . .' treated a combination of the two motions as proper procedure". As stated by the Eighth Circuit, "[t]he distinction between the two insufficiencies is often blurred, and it is appropriate to present and analyze service under both rules." *Adams v. AlliedSignal General Aviation Avionics*, 74 F.3d 882, 884 n. 2 (8th Cir.1996).

5. The need for a such a petition was eliminated by the 1993 amendments to Rule 4.

dant." *Knowlton v. Allied Van Lines, Inc.,* 900 F.2d 1196, 1201 (8th Cir.1990). "Change of venue, although within the discretion of the district court, should not be freely granted. Courts are in the business of deciding cases, not playing procedural hockey among available districts at the whim of dissatisfied parties." *In re Nine Mile Ltd.,* 692 F.2d 56, 61 (8th Cir.1982) *overruled on other grounds, Missouri Housing Development Com'n v. Brice,* 919 F.2d 1306, 1311 (8th Cir.1990).

 When considering a motion to transfer a civil action to another district or division where it may have been brought, a court is statutorily required to balance three factors: (1) convenience of parties, (2) convenience of witnesses, and (3) interests of justice. 28 U.S.C. § 1404(a). In keeping with the "flexible and multifaceted analysis that Congress intended to govern motions to transfer within the federal system," *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 31, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), the evaluation of a transfer motion is not limited to these three factors, but instead, "such determinations require case-by-case evaluation of particular circumstances at hand and consideration of all relevant factors." *Terra Int'l., Inc. v. Mississippi Chemical Corp.,* 119 F.3d 688, 691 (8th Cir.1997), *cert. denied,* 522 U.S. 1029, 118 S.Ct. 629, 139 L.Ed.2d 609 (1997).

### 1. CONVENIENCE OF THE PARTIES

Regardless of where this action is venued, one of the parties will claim to be inconvenienced and placed at a disadvantage at trial. In this case, it is more convenient for the Defendant to litigate in Minnesota. However, Dakota Collectibles chose to litigate in North Dakota. Its choice must be afforded some deference. *See Hubbard v. White,* 755 F.2d 692, 694–95 (8th Cir.1985) *cert. denied,* 474 U.S. 834,

106 S.Ct. 107, 88 L.Ed.2d 87 (1985); *Nelson v. Soo Line Railroad Co.,* 58 F.Supp.2d 1023, 1026 (D.Minn.1999). Transferring this action to a district court in Minnesota would only serve to shift the alleged inconvenience and hardship from Grand Central Graphics to Dakota Collectibles. *Terra Int'l Inc. v. Mississippi Chem. Corp.,* 119 F.3d 688, 696–97. "Merely shifting the inconveniences from one side to the other ... is not a permissible justification for a change of venue." *Id.* The Court finds that this factor weighs in favor of venue in North Dakota.

### 2. CONVENIENCE OF THE WITNESSES

The factor generally afforded the greatest weight by courts considering a motion for change of venue is the convenience of the witnesses. Nevertheless, this factor is not dispositive and must still be weighed against the other relevant factors—such as the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The party with the longest list of potential witnesses who reside in their respective district will not necessarily prevail. *See Terra Int'l. Inc. v. Mississippi Chem. Corp.,* 119 F.3d 688 at 696 (noting that "sheer numbers of witnesses will not decide which way the convenience factor tips"). Rather, the Court "must examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum." *Reid–Walen v. Hansen,* 933 F.2d 1390, 1396 (8th Cir.1991).

Neither party has provided the Court with a list of potential witnesses. Neither party has even speculated as to the number of potential witnesses that would appear. With the scant information available

to the Court, this factor weighs in favor of venue in North Dakota.

### 3. *INTERESTS OF JUSTICE*

In *Terra Int'l. Inc. v. Mississippi Chem. Corp.*, the Eighth Circuit recognized several factors to consider in the interest of justice for Section 1404(a) purposes: (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law. 119 F.3d 688, 696 (8th Cir.1997). Regarding the first factor, the Court finds that judicial economy would not be better served by a transfer of venue.

"In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under typically bears the burden of proving that a transfer is warranted." *Terra Int'l. Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 695 (8th Cir.1997). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Reid–Walen v. Hansen*, 933 F.2d 1390, 1396 (8th Cir.1991) (finding that the defendant "must overcome the heavy presumption against disturbing the plaintiff's forum choice"). This factor weighs in favor of retaining the case in North Dakota.

The next factor the Court must consider is the comparative costs to the parties of litigating in each forum. Neither party has offered the court any estimates as to how much more it would cost to try the case in another forum.

Finally, turning to the remaining factors, namely each party's ability to enforce a judgment, obstacles to a fair trial, conflict of law issues, and the advantages of having a local court determine questions of local law, the Court sees no difficulty in either party enforcing a favorable judgment on its claims in either federal forum. Thus, this factor does not weigh in favor of transfer. Additionally, the Court does not find any relative advantages or obstacles to a fair trial for either party in either forum. The Court finds that the balance of the interest of justice factors weighs in favor of venue in North Dakota.

### III. *CONCLUSION*

Based on the foregoing reasons, the Defendant's Motion to Dismiss is **GRANTED** in part (Docket No. 5). The Plaintiff's claims against defendant Barbara Geer are **DISMISSED** for lack of personal jurisdiction. The claims against defendant Grand Central Graphics, Inc. remain.

**IT IS SO ORDERED.**