# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2160

_____

| | | |
|---|---|---|
| William A. Epps and | * | |
| Leslie A. Epps, on behalf of | * | |
| themselves and all others | * | |
| similarly situated, | * | |
| | * | Appeal from the United States |
| Appellants, | * | District Court for the Eastern |
| | * | District of Arkansas. |
| v. | * | |
| | * | |
| Stewart Information Services Corp., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: November 7, 2002

Filed: April 1, 2003

_____

Before RILEY, BEAM, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

William and Leslie Epps filed a class-action suit against Stewart Information Services Corporation ("SISCO").[1] The Eppses claimed that during the class period,

---

[1] SISCO is a holding company that owns stock in various companies including Stewart Title and Guaranty ("Stewart Guaranty"), a wholly-owned subsidiary of SISCO, and Stewart Title Company of Arkansas, Inc. ("Stewart Title"), a wholly-

SISCO illegally compensated realty companies and brokers in violation of the Real Estate Settlement Practices Act ("RESPA").The District Court[2] dismissed their complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). We affirm.

## I.

*Background*

The Eppses complained that SISCO will pay referral fees to realty companies and brokers if those companies' agents sell title insurance to buyers through a SISCO company named "TitleMax." The Eppses contended that TitleMax's receipt of payments turns the referring agent into a provider of title services. They alleged that SISCO performs all settlement services and that the real estate agent retains up to 60% of the settlement-services fees paid by the purchaser. The Eppses further claimed that SISCO does not disclose to home buyers the financial arrangement it has with the brokers as required by RESPA. Finally, the Eppses claimed that SISCO leased office space in buildings owned by realty companies and paid those companies rent at higher-than-market-value rates. The Eppses alleged that these overpayments are actually "kickbacks" made in exchange for referrals.

SISCO moved to dismiss the Eppses' complaint for lack of personal jurisdiction. In support of its motion, SISCO offered the affidavit of Sue Pizzitola, its Assistant Vice President and Assistant Secretary-Treasurer. Pizzitola averred that

---

owned subsidiary of Stewart Guaranty. Although the Eppses used the name "Stewart" throughout its brief to denote SISCO and some of its subsidiaries and related companies, including Stewart Title and Stewart Guaranty, SISCO is the only defendant named in the complaint.

[2] The Honorable James M. Moody, United States District Court Judge for the Eastern District of Arkansas.

SISCO had no direct connection to Stewart Title.[3] The Eppses countered with an affidavit from their attorney. He asserted that SISCO's internal documentation and its Securities and Exchange Commission ("SEC") reports showed SISCO maintained contacts with Stewart Title substantial enough to warrant the District Court's exercise of personal jurisdiction.[4] Through these documents, the Eppses sought to demonstrate

---

[3] In her affidavit, Pizzitola asserted that SISCO: (1) has only one office, located in Houston, Texas; (2) is not licensed or qualified to do business in Arkansas; (3) does not pay taxes in Arkansas; (4) has no places of business, mailing addresses, bank accounts, or telephone listings in Arkansas; (5) does not own, use, or possess any real or personal property in Arkansas; (6) has never marketed, sold, or distributed any goods or services in Arkansas; (7) has never contracted to provide goods or services in Arkansas; 8) did not own TitleMax or any capital stock of Stewart Title, and did not finance their operations; 9) did not have common directors or officers with or finance the operations of Stewart Title; 10) did not induce Stewart Title's incorporation or subscribe to any of its capital stock; 11) did not pay any of Stewart Title's salaries, expenses, or losses; 12) did not transact business with Stewart Title or use its property; 13) that Stewart Title was not a department or division or subsidiary of SISCO; 14) SISCO did not give direction to Stewart Title; 15) Stewart Title's business or financial responsibility was not described as SISCO's business or financial responsibility.

[4] The Eppses' attorney's affidavit attached various exhibits, including: 1) copies of SISCO's 2000 SEC 10-K filed with the SEC indicating that Stewart Guaranty was a wholly-owned subsidiary whose debts and assets were considered SISCO's debts and assets; 2) a letter from Stewart Title Guaranty Company to Pulaski Title indicating that the company's president and CEO held an office in SISCO and that Stewart Guaranty was a "Stewart Information Services company"; 3) SISCO's company directory noting that Malcolm Morris was President of Stewart Guaranty and Chairman/Co-CEO of SISCO, and that Stewart Morris was Chairman of Stewart Guaranty and President/Co-Chairman of SISCO; (4) excerpts from the deposition of Jeffrey Fuller, an Arkansas real estate agent who had engaged in business with TitleMax; 5) a screen print of www.titlemax.com showing the connection between TitleMax and Stewart Title; 6) a copy of Stewart Title's Regional Directory printed from SISCO's website, showing Craig Gill as Stewart's Arkansas underwriter for Region G; 7) a copy of Region G of SISCO's Regional Map, also printed from

-3-

that SISCO did not draw any distinction between itself and its subsidiaries, but instead held itself out as a title insurance company providing title insurance and other settlement services "in all 50 states." SISCO acknowledged owning subsidiaries, including some in Arkansas. SISCO maintained, however, that it was merely a holding company and that the Eppses' proof failed to establish that SISCO, and not its subsidiaries, had minimum contacts with Arkansas. In their response, the Eppses attached a SISCO press release announcing the results of the company's 2001 fourth quarter and yearly earnings. In the release, SISCO stated that it provided title insurance and related information services through issuing locations in the United States, including Arkansas.

After reviewing the parties' pleadings and affidavits, the District Court dismissed the Eppses' complaint without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(2). The District Court determined that the Eppses failed to show that SISCO had sufficient minimum contacts with Arkansas to allow the court to exercise personal jurisdiction over SISCO.

## II.

### *Standard of Review*

Rule 12(b)(2) motions are reviewed de novo. *First National Bank of Lewisville, Ark. v. First National Bank of Clinton, Kentucky,* 258 F.3d 727, 729 (8th Cir. 2001)*; Moog World Trade Corp. v. Bancomer, S.A.*, 90 F.3d 1382, 1384 (8th Cir.1996). If the District Court does not hold a hearing and instead relies on pleadings and affidavits, then we must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party. *First National*, 258 F.3d at 729.

---

SISCO's website, showing Arkansas in Region G; and 8) a copy of SISCO's "Exhibit of Subsidiaries" from its 2000 SEC 10-K filing, which included "Stewart Title of Arkansas" as a subsidiary.

To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction. *Falkirk Min. Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 373 (8th Cir.1990); *Watlow Elec. Mfg. v. Patch Rubber Co.*, 838 F.2d 999, 1000 (8th Cir.1988). The party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction. *Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 575 (8th Cir.1992); *Newhard, Cook & Co. v. Inspired Life Centers, Inc.*, 895 F.2d 1226, 1228 (8th Cir.1990). While the plaintiffs bear the ultimate burden of proof, jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing. *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991) (citing *Cutco Ind. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986)).

## III.

### *Discussion*

On appeal, the Eppses argue that they made a prima facie showing of personal jurisdiction through evidence of SISCO's connection with and control of its Arkansas subsidiaries, Stewart Guaranty and Stewart Title. Specifically, the Eppses argue that the law is clear that when one corporation is so organized and controlled by another that the subsidiary is merely an instrumentality or adjunct of its parent corporation, the parent can be found to have subjected itself to jurisdiction under a state's long-arm statute. They contend their documentary evidence established conclusively that SISCO directed its activities towards Arkansas residents to such an extent that it could be said to have been doing business in Arkansas.

SISCO responds that the District Court does not have personal jurisdiction over it because SISCO has no contacts with the State of Arkansas other than its ownership of stock in companies that have ties to Arkansas, and that this is not sufficient to subject it to Arkansas's long-arm statute. As such, in order for the Eppses to prevail, they must show by clear proof that SISCO either abused its corporate organizational

form for improper purposes or that SISCO so controls the "operational minutia" of its subsidiaries that have minimum contacts with Arkansas that SISCO itself can be said to be doing business in Arkansas. SISCO argues that the court correctly found that the proof offered by SISCO was insufficient to show the nature, quantity, or quality of SISCO's contacts with Arkansas. We agree.

## A.
### *Applicable Law*

Because Arkansas's long-arm statute extends jurisdiction over nonresidents to the maximum extent permitted by the Due Process Clause, *see* Ark. Code Ann. § 16-4-101 (Repl. 1999), our inquiry is whether the exercise of personal jurisdiction over SISCO would comport with due process. *First National*, 258 F.3d at 729; *Gould,* 957 F.2d at 575. Due process requires sufficient "minimum contacts" between the defendant and the forum state so that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Defendant's contacts must be more than "random, fortuitous, or attenuated." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

In *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), the United States Supreme Court expanded the limits of state jurisdiction over nonresident defendants, while leaving in place basic due process limitations on that power. The Court focused not on the presence of the defendant in the state, as it had fifty years earlier in *Pennoyer v. Neff*, 95 U.S. 714 (1877), but rather on the nature of the contacts that the nonresident defendant had with the forum state. The Court stated that attention must be paid to the "quality and nature" of the contacts, as well as to whether the defendant, through those contacts, enjoyed the "benefits and protections"

of the laws of the foreign state. *International Shoe*, 326 U.S. at 319. The Court further noted that situations exist in which a nonresident defendant's contacts with a forum state may be so substantial and continuous as to justify jurisdiction over that defendant even though the cause of action is "entirely distinct from those activities." *Id.* at 318. The Court's touchstone inquiries ask whether personal jurisdiction over the nonresident defendant is based on "minimum contacts" and whether assumption of personal jurisdiction would offend "traditional notions of fair play and substantial justice." *Id.* at 316.

Since *International Shoe,* the Court has revisited and refined the analysis of personal-jurisdiction issues. A nonresident defendant's contacts with a forum state, for example, must be sufficient to cause the defendant to "reasonably anticipate being haled into court there." *Worldwide Volkswagen Corp.*, 444 U.S. at 297. The Court has also identified two types of personal jurisdiction: general and specific. When a cause of action arises out of or is related to a defendant's contacts with the forum state, the exercise of personal jurisdiction is one of specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984); *Burlington Industries, Inc. v. Maples Industries, Inc.*, 97 F.3d 1100, 1103 (8th Cir. 1996) (citing *Wessels, Arnold & Henderson v. National Medical Waste, Inc.*, 65 F.3d 1427, 1432 n. 4 (8th Cir. 1995)). However, if the exercise of jurisdiction does not depend on the relationship between the cause of action and the defendant's contacts with the forum state, the exercise of personal jurisdiction is one of general jurisdiction. *Helicopteros Nacionales*, 466 U.S. at 415 n. 9. When general jurisdiction is in question, a defendant may be subject to the forum state's exercise of personal jurisdiction if contacts with the state are continuous and systematic. *Id.* at 414.

We have established a five-factor test – the first three factors being the most important – to determine the sufficiency of the defendant's contacts. Those five factors are: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest

of the forum state in providing a forum for its residents; and (5) convenience of the parties. *Burlington Industries*, 97 F.3d at 1102 (citing *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983)). Notably, another wrinkle is added when the defendant is a nonresident parent corporation. In that situation, personal jurisdiction can be based on the activities of the nonresident corporation's in-state subsidiary, but only if the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego. *See Contractors, Laborers, Teamsters & Engineers Health Plan v. Hroch*, 757 F.2d 184, 190 (8th Cir.1985); *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Management, Inc.*, 519 F.2d 634, 637 (8th Cir.1975). If the resident subsidiary corporation is the alter ego of the nonresident corporate defendant, the subsidiary's contacts are those of the parent corporation's, and due process is satisfied. *Lakota Girl Scout Council*, 519 F.2d at 637. As we explained,

> A corporation is not doing business in a state merely by the presence of its wholly owned subsidiary. *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925). However, the fiction of corporate entity may be disregarded, where one corporation is so organized and controlled and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of another corporation. *Even a non-owned corporation may act as agent for another corporation.* No all embracing rule has been laid down under which the relationship between two corporations may be determined. The circumstances in each case must be examined to determine whether a corporation through the activities of another corporation has subjected itself to jurisdiction in a state under its long arm statute.

*Lakota Girl Scout Council*, 519 F.2d at 637. (Emphasis added.) Personal jurisdiction can be properly asserted over a corporation if another is acting as its alter ego, even

if that alter ego is another corporation. *Id.* (citing *Frazier v. Alabama Motor Club, Inc.*, 349 F.2d 456, 459 (5th Cir.1965); *Industrial Research Corp. v. General Motors Corp.*, 29 F.2d 623, 625 (N.D.Ohio, 1928); *Karlin v. Avis*, 326 F.Supp. 1325 (E.D.N.Y.1971)).

In view of these principles, a court's assertion of jurisdiction is contingent on the ability of the plaintiffs to pierce the corporate veil. *See Lakota Girl Scout Council*, 519 F.2d at 638. State law is viewed to determine whether and how to pierce the corporate veil. *Id.* The Arkansas courts have stated that the doctrine of piercing the corporate veil is founded in equity and is applied when the facts warrant its application to prevent injustice. *Humphries v. Bray*, 611 S.W.2d 791, 793 (Ark. Ct. App.1981) (citing *Aetna Casualty and Surety Company v. Stover*, 327 F.2d 288 (8th Cir. 1964)). Piercing the fiction of a corporate entity should be applied with great caution. *Banks v. Jones*, 390 S.W.2d 108, 111 (Ark. 1965). A parent corporation is not liable for the debts of its subsidiary merely because the parent holds the controlling interest or because the two are managed by the same officers. *Rounds & Porter Lumber Co. v. Burns*, 225 S.W.2d 1, 2 (Ark. 1949). Rather, it is only when the privilege of transacting business in corporate form has been illegally abused to the injury of a third person that the corporate entities should be disregarded. *Id.* at 3. A corporation and its stockholders are separate and distinct entities, even though a stockholder may own the majority of the stock. *Banks*, 390 S.W.2d at 110. The conditions under which the corporate entity may be disregarded or looked upon as the alter ego of the principal stockholder vary according to the circumstances of each case. *Humphries,* 611 S.W.2d at 793; *Winchel v. Craig*, 934 S.W.2d 946, 950 (Ark. Ct. App. 1996). Arkansas courts recognize the alter ego approach to piercing the corporate veil. *Id.*

B.

*Personal Jurisdiction Analysis*

We must review SISCO's contacts from two perspectives. First, for purposes

of specific personal jurisdiction, we must consider whether SISCO itself had minimum contacts with Arkansas to subject itself to the personal jurisdiction of the District Court. If direct minimum contacts are not present, we must determine whether we can properly pierce Stewart Title's or Stewart Guaranty's corporate veil under the alter-ego approach to establish general personal jurisdiction over SISCO. The evidence here indicates that SISCO itself was neither present nor doing business in Arkansas. Rather, SISCO, a Delaware Corporation, had one corporate office in Houston, Texas, and was not authorized by the Arkansas Secretary of State to do business in Arkansas. It has no place of business, mailing address, bank accounts, or personal property in Arkansas to connect the company directly to the state. While some of SISCO's corporate officers are also corporate officers of Stewart Guaranty, there is no evidence in the record as to whether those officers conduct any business or are located in Arkansas, and no direct evidence that they are connected to Stewart Title. Consequently, the evidence indicates that SISCO has no direct contacts with Arkansas; thus, it is not subject to specific personal jurisdiction in the state.

We turn then to whether general personal jurisdiction exists through an alter-ego approach. The facts indicate that Stewart Guaranty is a wholly-owned subsidiary of SISCO, and Stewart Guaranty wholly owns Stewart Title. SISCO includes Stewart Guaranty's assets and liabilities as its own in its SEC 10-K filings. This evidence alone, however, is insufficient to prove that SISCO directly does business in Arkansas because the general rule is that a parent corporation that owns a subsidiary – even wholly owns a subsidiary – is not present in a state merely because the subsidiary is there. Applying our five-factor test from *Burlington Industries*, SISCO's mere ownership of Stewart Guaranty is too distant and limited a contact with Arkansas to justify subjecting it to the District Court's exercise of personal jurisdiction. Furthermore, the Eppses never linked SISCO specifically to Arkansas except as a parent corporation that claimed the assets and debts of its subsidiary, Stewart Guaranty. In addition, as the District Court noted, even if we considered SISCO as one with Stewart Guaranty, the Eppses failed to provide any evidence of significant

links between Stewart Guaranty and Stewart Title. While the SEC 10-K filing raises questions about Stewart Guaranty's independence from SISCO, this form only supports the connection between parent and subsidiary and wholly fails to show any relation between SISCO and Stewart Title. Moreover, even assuming that the TitleMax website[5] is directly connected to SISCO, that the website's statements are true, and that the SEC filing information regarding SISCO's 5,000 locations is accurate, we are still presented with a scenario lacking "the nature and quality of contacts" necessary to support an exercise of general personal jurisdiction.

In sum, our decision after de novo review comports with the District Court's determination that it lacked personal jurisdiction over SISCO. Although we review this case in the light most favorable to the Eppses, we nonetheless conclude that the facts do not sufficiently connect SISCO to Arkansas to bring it within the state's personal jurisdiction under Arkansas's long-arm statute. As such, the District Court's dismissal without prejudice is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[5] The TitleMax website is owned by a Stewart company in Illinois, not by SISCO directly.