# FOR PUBLICATION
# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BARBARA BAUMAN; GREGORY
GRIECO; JOSEFINA NUNEZ; GABRIELE
NUNEZ; MIRIAM NUNEZ; SILVIA
NUNEZ; EMILIO GUILLERMO PESCE;
MIRTA HAYDEE ARENAS; GRACIELA
GIGENA; GUILLERMO ALBERTO
GIGENA, NURIA GIGENA; AMELIA
SCHIAFFO; ELBA LEICHNER;
ANUNCIACION SPALTRO DE
BELMONTE; HECTOR RATTO;
EDUARDO OLASIREGUI; RICARDO
MARTIN HOFFMAN; EDUARDO
ESTIVILLE; ALFREDO MANUEL
MARTIN; JUAN JOSE MARTIN; JOSE
BARREIRO; ALEJANDRO DAER,
              *Plaintiffs-Appellants,*

                v.

DAIMLERCHRYSLER CORPORATION;
DAIMLERCHRYSLER AG,
              *Defendants-Appellees.*

No. 07-15386

D.C. No.
CV-04-00194-RMW
Northern District of
California,
San Jose

ORDER

Filed November 9, 2011

Before: Mary M. Schroeder, Dorothy W. Nelson, and
Stephen Reinhardt, Circuit Judges.

Order;
Dissent by Judge O'Scannlain

## ORDER

The panel has voted unanimously to deny the petition for rehearing. Judge Schroeder and Judge Reinhardt have voted to deny the petition for rehearing en banc, and Judge Nelson so recommended.

A judge of the court called for a vote on the petition for rehearing en banc. A vote was taken, and a majority of the active judges of the court failed to vote for en banc rehearing. Fed. R. App. P. 35(f).

The petition for rehearing and the petition for rehearing en banc are **DENIED**. No further petitions for panel or en banc rehearing will be entertained.

---

O'SCANNLAIN, Circuit Judge, joined by TALLMAN, BYBEE, CALLAHAN, BEA, M. SMITH, IKUTA, and N.R. SMITH, Circuit Judges, dissenting from the denial of rehearing en banc:

Our court today extends the reach of general personal jurisdiction far beyond its breaking point. Its holding, that federal courts have personal jurisdiction over a German corporation for its Argentinian subsidiary's alleged activities in Argentina based simply on having a separate U.S.-based subsidiary, is an affront to due process. The panel ignores the Supreme Court's warnings that the Due Process Clause permits "defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotation marks omitted). We thus place ourselves at odds again with the dictates of the Supreme Court, which has never approved such a broad jurisdictional reach as in this case. Moreover, our decision today is inconsistent with the law of at least six of our sister circuits.

I therefore dissent from our regrettable failure to rehear this case en banc.

I

The facts pertinent to this appeal are relatively straightforward. Twenty-two Argentinian residents brought suit in the Northern District of California against DaimlerChrysler A.G. ("Daimler"), a German corporation, alleging that one of its subsidiaries, Mercedes-Benz Argentina, engaged in human rights violations in Argentina during that country's "Dirty War" in the 1970s and 1980s. *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 911-12 (9th Cir. 2011). Without need for an evidentiary hearing, the district court properly dismissed the suit for lack of personal jurisdiction over Daimler. *Id.* at 913.

On appeal, the panel initially affirmed the district court. *Bauman v. DaimlerChrysler Corp.*, 579 F.3d 1088 (9th Cir. 2009), *vacated*, 603 F.3d 1141 (9th Cir. 2010). Then — after granting rehearing and without additional oral argument — the panel inexplicably changed its mind and reversed the district court, holding that Daimler was indeed subject to general jurisdiction in California based solely "through the contacts of its subsidiary Mercedes-Benz USA." *Bauman*, 644 F.3d at 912. In so holding, the panel drastically expands the reach of personal jurisdiction beyond all constitutional bounds.

No one disputes that Daimler itself lacks sufficient contacts with California to render it subject to general personal jurisdiction there. Nor does anyone dispute that Daimler's U.S.-based subsidiary, Mercedes-Benz USA, *does* have sufficient contacts with California to render it subject to general personal jurisdiction. *See Bauman*, 644 F.3d at 920 n.11. But Mercedes-Benz USA was not joined as a party to this lawsuit. The only question, then, is whether Mercedes-Benz USA's mere existence in California renders Daimler subject to gen-

eral personal jurisdiction for matters arising in Argentina without violating the Due Process Clause. *See id.* at 920.

## II

As the Supreme Court recently reaffirmed, for a foreign corporation to be subject to general jurisdiction, its contacts with the forum state must be "so continuous and systematic as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). Our court today undermines this stringent standard by inventing a new test for general personal jurisdiction that gives Daimler no "minimum assurance as to where . . . conduct will and will not render [it] liable to suit." *Burger King Corp.*, 471 U.S. at 472 (internal quotation marks omitted).[1]

## A

Under our case law, there are two separate tests for determining whether a subsidiary's contacts can be imputed to a parent corporation for purposes of general jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001). One test, the alter ego test, requires a showing "(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injus-

---

[1]The reasoning in *Goodyear* is directly applicable here. *Goodyear* asked the question: "Are foreign subsidiaries of a United States parent corporation amenable to suit in state court on claims unrelated to any activity of the subsidiaries in the forum State?" *Goodyear*, 131 S. Ct. at 2850. The Court answered that question with a resounding, and unanimous, "no." Said otherwise, an affiliate of a United States corporation is not subject to suit in a state where the affiliate itself took no action. By contrast, *Bauman* holds that an affiliate (in this case a foreign parent of a United States subsidiary) is amenable to suit in state court on claims unrelated to any activity of that affiliate in the forum State. This is exactly what *Goodyear* says we must not do; and as the Supreme Court explains, such an exercise of the state's coercive power is incompatible with the Due Process Clause. *See id.* at 2850-51.

tice." *Id.* (internal quotation marks omitted). The panel correctly concludes that this test is not at issue here because there is no reasonable argument that Daimler controls Mercedes-Benz USA "to such a degree as to render the latter the mere instrumentality of the former." *Id.* (internal quotation marks omitted); *see Bauman*, 644 F.3d at 920.

Yet the panel finds general jurisdiction over Daimler here by reformulating our other test, the agency test. *See id.* at 931. As interpreted by the *Bauman* panel, the agency test requires two showings: First, the subsidiary's services must be "sufficiently important to [the parent] that they would almost certainly be performed by other means if [the subsidiary] did not exist, whether by [the parent] performing those services itself or by [the parent] entering into an agreement with a new subsidiary or a non-subsidiary national distributor for the performance of those services." *Id.* at 922.[2] Second, it must be shown that the parent has "the right to substantially control" the subsidiary's activities. *Id.* at 924.[3] In redefining the agency

---

[2]The panel's newly reformed test is not even an accurate characterization of our precedents. As we clearly stated in *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398 (9th Cir. 1994), the relevant inquiry under the first part of the agency test is whether "the subsidiary was either established for, or is engaged in, activities that, but for the existence of the subsidiary, the parent would have to undertake *itself*," *id.* at 1405 n.9 (emphasis added); *see also Harris Rutsky & Co. Ins. Servs. v. Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003); *Doe*, 248 F.3d at 928-29. Surely, in the absence of its subsidiary, Daimler would not undertake Mercedes-Benz USA's activities itself. Rather, Daimler could easily do what it has done in the past and, for example, hire some other entity to handle U.S. operations. *See Bauman*, 644 F.3d at 914 (discussing Daimler's history of "independent distributors to distribute Mercedes-Benz vehicles in the United States").

[3]The panel also errs in interpreting the second part of the agency test, which requires a high degree of control of the subsidiary by the parent, essentially reaching the level of actual day-to-day control. *See Doe* at 926 ("An . . . agency relationship is typified by parental control of the subsidiary's internal affairs or daily operations."); *see also Harris Rutsky & Co. Ins. Servs.*, 328 F.3d at 1135; *Kramer Motors, Inc. v. British Leyland, Inc.*,

test, the panel drastically expands our test for personal juris-
diction and ignores the bedrock concerns of fundamental fair-
ness that underpin Supreme Court due process jurisprudence.

## B

The panel's interpretation of the agency test is far too
expansive and threatens to make innumerable foreign corpo-
rations unconstitutionally subject to general personal jurisdic-
tion in our courts. Indeed, it is difficult to see what limits
there are on the panel's formulation. Anything a corporation
does through an independent contractor, subsidiary, or distrib-
utor is presumably something that the corporation would do
"by other means" if the independent contractor, subsidiary, or
distributor did not exist. *Bauman*, 644 F.3d at 922.

Such a result surely cannot be squared with the Supreme
Court's repeated admonitions that due process must permit
"defendants to structure their primary conduct with some
minimum assurance as to where that conduct will and will not
render them liable to suit." *Burger King Corp.*, 471 U.S. at
472 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444
U.S. 286, 297 (1980)) (internal quotation mark omitted).
While the panel seems to be treating personal jurisdiction
lightly — perhaps even as a mere technicality — we must not
forget that limits on personal jurisdiction have constitutional
underpinnings. *See Brown*, 131 S. Ct. at 2853 ("The Due Pro-
cess Clause of the Fourteenth Amendment sets the outer

---

628 F.2d 1175, 1177 (9th Cir. 1980). As the panel originally held, Daimler
did not exercise "pervasive and continual control" over Mercedes-Benz
USA. *Bauman*, 579 F.3d at 1096. That determination was correct. Far
from having its day-to-day actions dictated from Germany, Mercedes-
Benz USA has considerable autonomy to act within the terms of a General
Distributor Agreement. *Bauman*, 644 F.3d at 914. Mercedes-Benz USA
negotiates its own seller's agreements, *id.* at 915, and even "ha[s] the
power to independently decide against buying" certain types of Daimler's
vehicles, *Bauman*, 579 F.3d at 1096.

boundaries of a state tribunal's authority to proceed against a defendant.").

Moreover, our court now seemingly rejects respect for corporate separateness, a well-established "principle of corporate law deeply ingrained in our economic and legal systems." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal quotation marks omitted). It is "[a] basic tenet of American corporate law . . . that the corporation and its shareholders are distinct entities," over which jurisdiction must be individually established. *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). "Where two corporations are in fact separate" — as they irrefutably are here — "permitting the activities of the subsidiary to be used as a basis for personal jurisdiction over the parent violates this principle and thus due process." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000); *cf. J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2797 (2011) (Ginsburg, J., dissenting) ("A few points on which there should be no genuine debate bear statement at the outset. . . . [A]ll agree, [the parent company] surely is not subject to general (all-purpose) jurisdiction in New Jersey courts, for that foreign-country corporation is hardly 'at home' in New Jersey.").

## III

The problems with today's decision don't end there. The panel's holding perpetuates a split with at least six of our sister circuits, which do not even recognize the existence of the agency test. Moreover, our holding today is an affront to international comity and threatens the ability of the Executive Branch to execute its foreign affairs duties.

## A

Not only does the panel's interpretation of the agency test fly in the face of due process, but the mere existence of the

agency test is also contrary to the law of at least six of our sis-
ter circuits.[4] Some circuits, for example, use only the alter ego
test. *See Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642,
648-49 (8th Cir. 2003) ("[P]ersonal jurisdiction can be based
on the activities of the nonresident corporation's in-state sub-
sidiary, but only if the parent so controlled and dominated the
affairs of the subsidiary that the latter's corporate existence
was disregarded so as to cause the residential corporation to
act as the nonresidential corporate defendant's alter ego.");
*Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir.
1990) ("Although the mere existence of a parent-subsidiary
relationship will not support the assertion of jurisdiction over
a foreign parent, there may be instances in which the parent
so dominates the subsidiary that they do not in reality consti-
tute separate and distinct corporate entities." (internal quota-
tion marks omitted)); *see also Estate of Thomson v. Toyota
Motor Corp. Worldwide*, 545 F.3d 357, 362-63 (6th Cir.

---

[4]It is also inconsistent with the Supreme Court's early decision in *Can-
non Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925) (Brandeis, J.).
There, the Court held that general personal jurisdiction may not be
imposed on a foreign corporation merely because of the corporation's
ownership of a subsidiary present in the forum state. *Id.* at 337; *see also
id.* ("The corporate separation, though perhaps merely formal, was real. It
was not pure fiction."). Though decided before the *International Shoe* line
of cases, *Cannon Mfg. Co.* has never been overruled. *See generally Int'l
Shoe Co. v. Washington*, 326 U.S. 310 (1945).

Moreover, as the panel's flip-flop in this case clearly demonstrates, the
agency test is far too manipulable to satisfy the requirements of due pro-
cess. *See Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1193 (2010) ("Simple
jurisdictional rules also promote greater predictability. Predictability is
valuable to corporations making business and investment decisions.").
Judges are not well equipped to make assessments about what a foreign
corporation *might* do in *unforseen*, *hypothetical* scenarios, especially in
the early stages of litigation. *See Bauman*, 644 F.3d at 920 (noting that the
subsidiary's services must be "sufficiently important to [the parent] that
they would almost certainly be performed by other means if [the subsid-
iary] did not exist, whether by [the parent] performing those services itself
or by [the parent] entering into an agreement with a new subsidiary or a
non-subsidiary national distributor for the performance of those services").

2008). Other circuits similarly describe their test as analogous to the corporate law doctrine of piercing the corporate veil. *See IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998) (Posner, C.J.); *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 62-63 (4th Cir. 1993). Yet another circuit uses words like "agency" while clearly applying something more like the alter ego test. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293-94 (11th Cir. 2000) ("For [plaintiffs] to persuade us that the district court had general personal jurisdiction over [the nonresident defendant] because of [its subsidiary's] activities in the United States, it would have to show that [the subsidiary's] corporate existence was simply a formality, and that it was merely [the parent's] agent.").

Whatever the precise name of the test, it is clear that the exercise of jurisdiction found to be proper here would be improper in many other circuits. Given that corporations must be able "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," *Burger King Corp.*, 471 U.S. at 472, this case presents a question of substantial importance where a uniform rule is desirable, *cf. Michelin Tire Corp. v. Wages*, 423 U.S. 276, 285 (1976) ("[T]he Federal Government must speak with one voice when regulating commercial relations with foreign governments.").

B

Finally, the panel's decision may also have unpredictable effects on foreign policy and international comity. In many European countries, for example, jurisdiction by imputation is discouraged. Council Regulation 44/2001, 2001 O.J. (L 012) 1 (EC). Nonetheless, several countries have enacted "retaliatory jurisdictional laws." Gary B. Born, *Reflections on Judicial Jurisdiction in International Cases*, 17 Ga. J. Int'l & Comp. L. 1, 15 (1987) ("These provisions empower national courts to exercise jurisdiction over foreign persons in circum-

stances where the courts of the foreigner's home state would have asserted jurisdiction."). For example, as a result of our court's holding today, an Italian court might be able to assert jurisdiction over a United States parent corporation based on that court's jurisdiction over a wholly owned Italian subsidiary.

Indeed, as the Solicitor General has noted, "foreign governments' objections to our state courts' expansive views of general personal jurisdiction have in the past impeded negotiations of international agreements on the reciprocal recognition and enforcement of judgments." Brief for the United States as Amicus Curiae Supporting Petitioners at 33, *Brown*, 131 S. Ct. 2846; *see also id.* at 12 ("[E]xcessive assertion of general jurisdiction potentially threatens particular harm to the United States' foreign trade and diplomatic interests."). Naturally, in the past, the Supreme Court has taken such issues to heart. *See, e.g.*, *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 115 (1987) (urging courts "to consider the procedural and substantive policies of other *nations* whose interests are affected by the assertion of jurisdiction by [state] court[s]"); *see also id.* ("Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." (internal quotation marks omitted)). Yet the panel brushed aside these concerns, which deserve full consideration.

## IV

In sum, Daimler is hardly "at home" in California when sued only for its Argentinian subsidiary's activities in Argentina. *Brown*, 131 S. Ct. at 2851. Our court's holding represents a breathtaking expansion of general personal jurisdiction, which is unwarranted in light of Supreme Court precedent, the precedent of our sister circuits, and our own precedents. Moreover, today's decision presents a gratuitous threat to our nation's economy, foreign relations, and international comity.

I respectfully dissent; our court should have granted the petition for rehearing en banc.