FRASERSIDE IP LLC, an Iowa Limited Liability Company, Plaintiff,

v.

GAMMA ENTERTAINMENT, a Canadian Entity, d/b/a PornerBros.com; John Does 1–100; John Doe Companies 1–100; www.pornerbros.com and Wildblue Media; d/b/a PornerBros.com, Defendants.

No. C11–3056–MWB.

United States District Court, N.D. Iowa, Central Division.

Sept. 28, 2012.

Chad Lorin Belville, Attorney at Law, Phoenix, AZ, for Plaintiff.

Constance M. Alt, Dana L. Oxley, Jennifer Rinden, Shuttleworth & Ingersoll, Cedar Rapids, IA, Richard Martin Foster, Sylvia Sultanyan, Law Office of Richard M. Foster, North Hollywood, CA, for Defendants.

## ORDER

LEONARD T. STRAND, United States Magistrate Judge.

This case is before the court on three motions: (1) defendants' motion to quash subpoena (Doc. No. 31); (2) plaintiff's motion to compel discovery (Doc. No. 37); and (3) defendants' motion for protective order (Doc. No. 43). All of the motions relate to the scope of permissible discovery concerning the defendants' websites and their contacts with the state of Iowa. As such, the court will address all three motions in this order.

## *BACKGROUND AND PROCEDURAL HISTORY*

Plaintiff Fraserside IP L.L.C. ("Fraserside") filed this action on November 7, 2011, against Gamma Entertainment ("Gamma") and Wild Blue Media ("Wild Blue"), doing business as PornerBros.com, and operating the website www.PornerBros.com (collectively "the Gamma defendants" unless otherwise indicated), John Does, and John Doe Companies. The complaint alleges the following causes of action: copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.;* contributory copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.;* vicarious copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.;* inducing copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.;* false designation of origin, in violation of 15 U.S.C. § 1125(a); and dilution of trademark, in violation of 15 U.S.C. § 1125(c). The Gamma defendants filed a motion to dismiss and motion to strike (Doc. No. 14) on January 30, 2012, contending that they are not subject to personal jurisdiction in Iowa and the complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2). They further argued, in the alternative, that the complaint must be dismissed for improper venue under Federal Rule of Civil Procedure 12(b)(3) and/or the doctrine of *forum non conveniens.*

On April 5, 2012, the Honorable Mark W. Bennett issued an order (Doc. No. 24) on the motion to dismiss. Judge Bennett held (a) Fraserside failed to meet its burden of demonstrating that Iowa courts have general jurisdiction over the Gamma defendants; (b) Fraserside failed to make a *prima facie* case of personal jurisdiction over any of the Gamma defendants under Iowa's long-arm statute; and (c) the federal long-arm statute contained in Federal Rule of Civil Procedure 4(k)(2) does not apply because the Gamma defendants concede they are subject to personal jurisdiction in another state (California). Rather than granting the motion to dismiss, however, Judge Bennett permitted Fraserside to engage in limited jurisdictional discovery "because Fraserside has proffered facts that, if proven, would affect [the court's] exercise of jurisdiction over the Gamma defendants."[1] In particular, Fraserside pointed out that the "AdultFriendFinder" feature on the PornerBros website offers live online chats with women who are purportedly located in Iowa.

On April 24, 2012, the Gamma defendants filed a motion (Doc. No. 25) seeking clarifica-

1. Judge Bennett denied the Gamma defendants' request for relief under the doctrine of *forum non conveniens* and, further, denied without prejudice their motion to dismiss for improper venue because the question of whether venue properly lies in this district depends upon resolution of the personal jurisdiction issue.

tion of Judge Bennett's order. Among other things, they asked the court to limit jurisdictional discovery to "the "AdultFriendFinder" issue. Judge Bennett issued on order (Doc. No. 29) on June 14, 2012, stating, *inter alia:* "Fraserside's discovery will not be limited to the "AdultFriendFinder" issue, but may inquire into other areas that are reasonably likely to aid in resolution of the jurisdictional issue here."

On July 3, 2012, Fraserside served its "First Set of Discovery" on the Gamma defendants. The discovery included ten interrogatories, four requests for production and seven requests for admissions. The Gamma defendants served responses and objections on August 6, 2012.

On July 27, 2012, Fraserside directed a subpoena to non-party Google Inc. ("Google") seeking all information in Google's possession relating to various Google Analytics[2] accounts for websites allegedly owned by the Gamma defendants or their affiliates. The Gamma defendants filed their motion to quash this subpoena on August 7, 2012. Fraserside then filed its motion to compel on August 21, 2012, followed by the Gamma defendants' motion for a protective order on August 27, 2012.

In their motions, the Gamma defendants contend that the information contained in Google Analytic reports concerning their websites is of a confidential and proprietary nature. Because Fraserside is a competitor, the Gamma defendants are concerned about providing Fraserside with such information. The Gamma defendants also contend that any jurisdictional discovery should be limited to (a) the one website owned by the Gamma defendants that is at issue in the lawsuit (PornerBros.com) or, at most, (b) websites owned by the Gamma defendants directly, as opposed to websites owned by subsidiaries and affiliates of the Gamma defendants.

In its motion to compel, Fraserside complains that the Gammas defendants failed to provide meaningful responses to Fraserside's written jurisdictional discovery. For example, Fraserside complains that the Gamma defendants have declined to provide a list of all websites they own and have been overly selective in providing redacted, photocopied Google Analytics reports. Fraserside also contends that the Gamma defendants should provide information concerning any website owned by the Gamma defendants and their subsidiaries, not just those owned directly by the Gamma defendants.

The court conducted a telephonic hearing on the three motions on September 7, 2012. During the hearing, counsel for Fraserside acknowledged that the information available through Google Analytics reports is so broad that his client, as a competitor of the Gamma defendants, should not have unfettered access to those reports. For jurisdictional purposes, Fraserside is willing to limit the scope of production from Google Analytics reports to data demonstrating the number of visits to particular websites from Iowa-based IP addresses. After some discussion, counsel for Fraserside and for the Gamma defendants indicated a belief that they may be able to reach agreement concerning the disputed issues. As such, the court adjourned the hearing and requested a status report by September 14, 2012. On that date, counsel for the Gamma defendants submitted a report (Doc. No. 50) stating that the parties have not been able to reach agreement. The report further states that the Gamma defendants are willing to "provide Plaintiff with Google Analytics reports with respect to websites that Defendants directly own, showing the number of visits from IP addresses based out of the state of Iowa, which have Google Analytics reports available."

Fraserside filed a response on September 17, 2012 (Doc. No. 52). Fraserside confirms that the parties are not in agreement and proceeds to itemize the issues in dispute, as Fraserside sees them. First, Fraserside states it has demanded, but not received,

---

2. Google Analytics is a service that allows "anyone with a website to track conversion data, analyze the flow of visitors through their site, and identify elements of their site that could be changed to improve visitor retention." *See* http://support.google.com/analytics/bin/answer. py?hl=en&answer=1008065&ctx=cb&src= cb&cbid=1trh69t3li9ui&cbrank=0. The parties agree, for example, that Google Analytics data allows them to determine the number of times a particular website was visited from an Internet Protocol ("IP") address registered in Iowa.

"native format" Google Analytic data showing the number of Iowa visitors to all Gamma-owned websites. Fraserside has received what it describes as "a copy of a PDF of a screen grab of the information" but believes it is entitled to the data in its native format. Second, Fraserside itemizes certain of the Gamma defendants' discovery responses that, according to Fraserside, have not been fully answered.

Because the parties did not reach agreement concerning their discovery disputes, the court reconvened and concluded the telephonic hearing on September 25, 2012. The motions are now fully submitted.

### ANALYSIS

As noted above, at this stage of the case Fraserside has permission to conduct only limited jurisdictional discovery. This means Fraserside's discovery requests are proper only to the extent they "are reasonably likely to aid in resolution of the jurisdictional issue here." *See* Doc. No. 29 at 3. The jurisdictional issue is whether the Gamma defendants have sufficient minimum contacts with Iowa to justify exercising personal jurisdiction over them. Doc. No. 24 at 19–20. As such, any discovery at this point must be limited to the issue of the Gamma defendants' contacts with Iowa.

Based on the parties' oral and written submissions, the court has determined that their dispute boils down to two primary issues: (1) the scope and format of Google Analytics information that Fraserside is entitled to receive and (2) the list of websites about which the Gamma defendants are required to provide information. Resolution of those issues will, for the most part, guide the court's analysis of Fraserside's complaints concerning specific responses to discovery requests.

### Google Analytics Data

█ The parties agree that the Google Analytics service tracks and accumulates a wide range of data concerning visits to a participating website, including specific details concerning visitor behavior; visitors' operating system and web browser; whether visitors are accessing the website through a mobile device, tablet, or desktop computer; how visitors got to the website; how much time visitors spend on the website; what pages they clicked on; and what keywords were most beneficial. *See, e.g.,* Motion for Protective Order (Doc. No. 43) at 6. The Gamma defendants assert that such information "constitutes a large portion of [their] business intelligence" and that providing such detailed information to Fraserside, a competitor, would cause substantial harm. *Id.* at 6–7.

Even apart from the Gamma defendants' concerns about disclosing proprietary information, it is apparent that the overwhelming majority of data available through Google Analytics has no relevance to the limited scope of permissible discovery at this stage of this case. Indeed, and as noted above, counsel for Fraserside has acknowledged that his client should not receive all such data. As such, and although Fraserside's subpoena to Google and discovery to the Gamma defendants made no effort to request only a narrow range of Google Analytics data, there is no dispute that Fraserside is entitled to receive only a small slice of that data. In particular, and for purposes of exploring the Gamma defendants' contacts with Iowa, Fraserside is entitled to receive data revealing the number of visits to particular websites [3] from Iowa-based IP addresses.

There is some dispute about the appropriate format for providing this information. Fraserside complains that the information it has received so far is in the form of "a copy of a PDF of a screen grab of the information." Samples provided to the court confirm that the Gamma defendants apparently generated Google Analytics reports via an Internet browser, printed the information displayed on the screen and produced photocopies to Fraserside. Fraserside seeks production of the information in "native format."

The court agrees that Fraserside is entitled to more than "a copy of a PDF of a screen grab of the information." *See* Fed. R.Civ.P. 34(b)(2)(E) (electronically-stored information should be produced "in a form or

---

3. The court will address the question of "Which websites?" in the following section.

forms in which it is ordinarily maintained or in a reasonably usable form or forms."). However, unlike electronic files created and stored using proprietary software such as Microsoft Word or Microsoft Excel, it is not apparent what "native format" means in this situation. Neither counsel was able to provide a satisfactory explanation during the September 25, 2012, hearing, although counsel for the Gamma defendants did express a belief that counsel would be able to reach agreement concerning production of the information in HTML format.

Based on its discussions with counsel, the court anticipates that the Gamma defendants will generate "Iowa IP" reports for each website at issue and will save those reports as HTML pages that can be produced electronically and opened with a standard Internet browser. However, if this is not technologically possible and/or the parties cannot agree on an acceptable solution, the court will schedule another hearing to address the issue.

■ Finally, the court notes that neither Fraserside nor the Gamma defendants have addressed the appropriate time period for the Google Analytics data. In determining whether the court has personal jurisdiction over a defendant, the court is not limited to examining the circumstances present when the suit was filed. Instead, minimum contacts "must exist either at the time the cause of action arose, the time the suit was filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." *Johnson v. Woodcock,* 444 F.3d 953, 955–56 (8th Cir.2006) (quoting *Pecoraro v. Sky Ranch For Boys, Inc.,* 340 F.3d 558, 562 (8th Cir.2003)); *see also Johnson v. Am. Leather Specialties Corp.,* 565 F.Supp.2d 1015, 1022 (N.D.Iowa 2008). A "reasonable period of time" can include a period of several years. *See, e.g., Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560 (2d Cir.1996) (examining defendant's contacts over a six-year period prior to commencement of the action); *Wilson v. Belin,* 20 F.3d 644, 650–51 (5th Cir.1994) (examining contacts over five-year period), *cert. denied,* 513 U.S. 930, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994); *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1329–

31 (9th Cir.1984) (examining contacts over three-year period).

Here, the complaint was filed in 2011 and alleges that Fraserside was formed in 2010. For purposes of evaluating the Gamma defendants' contacts with Iowa, the court finds that January 1, 2009, is the appropriate starting point of "a reasonable period of time immediately prior to the filing of the lawsuit." As such, and while Fraserside's requests for Google Analytics data do not specify any particular period of time, the court will order the production of all available Google Analytics data concerning the number of website visits from Iowa-based IP addresses for the period of time beginning January 1, 2009, and ending November 7, 2011.

### Websites For Which Information Must Be Provided

■ Fraserside's discovery requests seek information about the Gamma defendants and their "Affiliates," a word that is defined broadly to include their subsidiaries and other entities under their control. For purposes of evaluating the Gamma defendants' contacts with Iowa, Fraserside contends it is entitled to information concerning all websites owned by the Gamma defendants and their "Affiliates." By contrast, the Gamma defendants contend that because their "PornerBros.com" website is the only website at issue in this lawsuit, it is the only website about which Fraserside may obtain information. Both arguments are incorrect.

The Gamma defendants confuse the issues of personal jurisdiction and liability. While their PornerBros website may be the only website at issue for purposes of determining liability, the jurisdictional inquiry is whether the defendants have had sufficient minimum contacts with Iowa to justify the exercise of personal jurisdiction. *See, e.g., Coen v. Coen,* 509 F.3d 900, 905 (8th Cir.2007) (*citing World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). This is why Judge Bennett previously determined that Fraserside's discovery is not limited to "AdultFriendFinder" but, instead, "may inquire into other areas that are reasonably likely to aid in resolution of the jurisdictional issue." Fraserside is entitled to relevant information concerning

all of the Gamma defendants' websites, not just PornerBros.com.

Fraserside is not, however, entitled to information concerning websites owned by entities other than the two named Gamma defendants. In evaluating a defendant corporation's minimum contacts with the forum state, the court may not consider the activities of subsidiaries unless the plaintiff presents facts permitting the court to pierce the corporate veil and treat the subsidiaries as mere alter egos of the defendant. *See, e.g., Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 648–49 (8th Cir.2003). Thus, even if one of the Gamma defendants has a wholly-owned subsidiary that has had substantial contacts with Iowa, those contacts would not be treated as the parent company's contacts in the absence of evidence that justifies the piercing of the corporate veil. *Id.*

Fraserside has not argued that the corporate veils of any subsidiary should be pierced so as to attribute its contacts to one of the Gamma defendants. Even if Fraserside made such an argument, the record contains no supporting evidence.[4] As such, even if the Gamma defendants have subsidiaries that own websites, Fraserside has not demonstrated that information concerning those subsidiaries, or their websites, is relevant to the jurisdictional issue.

Based on the foregoing, the court finds that Fraserside is entitled to discover information about visits from Iowa-based IP addresses to any website owned by either of the two Gamma defendants. Fraserside is not, at this time at least, entitled to discover information about websites not owned by either of the two Gamma defendants.

### The Google Subpoena

■ Fraserside's subpoena to Google, which is the subject of the Gamma defendants' motion to quash, contains none of the limitations discussed in this order. It demands that Google produce "[a]ny and all information" concerning fifteen groups of Google Analytics accounts. Fraserside did not attempt to narrowly-tailor the subpoena to request only data showing visits to the Gamma defendants' websites from Iowa-based IP addresses. Nor is it clear that the Gamma defendants are the owners of each website for which Google Analytics data is demanded. These defects, alone, are sufficient for the court to quash the subpoena. *See* Fed.R.Civ.P. 45(c)(3)(b). In any event, and as already discussed above, the court will order the Gamma defendants to produce relevant Google Analytics information to Fraserside. At this stage of the case, therefore, the subpoena would be cumulative and unnecessary even if narrowed to an appropriate scope. The court will grant the motion to quash.

### The Gamma Defendants' Discovery Responses

In its "Update" filed September 17, 2012, Fraserside asks the court to order the Gamma defendants to provide full and complete supplemental responses to the following discovery requests: Interrogatories 1, 2, 3, 4, 5, 8 (as to Iowa-based "Affiliates") and 9; Requests For Production (as to Iowa customers) 1, 2, 3 and 4; and Requests for Admissions 1, 2, 3, 4, 5 and 7. Based on the court's review of these requests and the parameters set forth elsewhere in this order, the court concludes that Fraserside is entitled to the following information:

*Int. No. 1:* The Gamma defendants shall identify each website owned by either of the Gamma defendants at any time between January 1, 2009, and November 7, 2011.

*Int. No. 2:* If either Gamma defendant, at any time between January 1, 2009, and

---

4. The court looks to state law to determine if a corporate veil should be pierced as part of the jurisdictional analysis. *See Epps*, 327 F.3d at 649. Here, no particular subsidiaries have been identified so the states of incorporation of any such subsidiaries are not known. Under Iowa law, exceptional circumstances are required to pierce a corporate veil, with the relevant factors being: (1) the corporation is undercapitalized,

(2) it lacks separate books, (3) its finances are not kept separate from individual finances, or individual obligations are paid by the corporation, (4) the corporation is used to promote fraud or illegality, (5) corporate formalities are not followed, and (6) the corporation is a mere sham. *See, e.g., In re Marriage of Ballstaedt*, 606 N.W.2d 345, 349 (Iowa 2000).

November 7, 2011, targeted sales or advertising to Iowa residents specifically, as opposed to simply making content generally available to users of the Internet regardless of location, the Gamma defendants shall provide the requested information about those activities.

*Int. No. 3:* If either Gamma defendant purchased goods or services from, or sold goods or services to, an Iowa resident at any time between January 1, 2009, and November 7, 2011, the Gamma defendants shall provide the requested information concerning each such transaction.

*Int. No. 4:* As discussed above, the Gamma defendants shall provide Google Analytics data concerning the number of website visits from Iowa-based IP addresses for the period of time beginning January 1, 2009, and ending November 7, 2011. The data shall be provided for each website owned by either of the Gamma defendants during that period of time.

*Int. No. 5:* The court finds this interrogatory to be vague and ambiguous in its failure to define the word "clients." In any event, the information the Gamma defendants must provide concerning Interrogatory Numbers 3 and 4 will serve as a reasonable response to this interrogatory, as well.

*Int. No. 8:* If either of the Gamma defendants has had a subsidiary, parent company or sister company located in Iowa or registered to do business in Iowa at any time after January 1, 2009, they shall identify all such entities.

*Int. No. 9:* No additional information is required at this time.

*Doc. No. 1:* The court agrees with the Gamma defendants that this request is overly broad. Moreover, the requested information duplicates that which the court has ordered with regard to Interrogatory No. 3.

*Doc. No. 2:* As discussed above, the Gamma defendants shall provide Google Analytics data concerning the number of website visits from Iowa-based IP addresses for the period of time beginning January 1, 2009, and ending November 7, 2011. The data shall be provided for each website owned by either of the Gamma defendants during that period of time.

*Doc. No. 3:* The court agrees with the Gamma defendants that this request is overly broad. Moreover, the requested information duplicates that which the court has ordered with regard to Interrogatory No. 3.

*Doc. No. 4:* If the Gamma defendants purposely directed solicitations to specific individuals they knew to be Iowa residents during the period of time beginning January 1, 2009, and ending November 7, 2011, they shall either provide copies of such materials or, in the alternative, a report itemizing the number of solicitations purposely directed into Iowa and the number of known Iowa residents to whom the solicitations were directed.

*Adm. No. 1:* The Gamma defendants shall admit or deny this request only with regard to the named Gamma defendants (and the websites either of them may own), not with regard to "Affiliates," and only with regard to the period of time beginning January 1, 2009, and ending November 7, 2011.

*Adm. No. 2:* The Gamma defendants shall admit or deny this request with regard to the named Gamma defendants only, not with regard to "Affiliates." In addition, the court agrees that the term "customers" is ambiguous. In their response, the Gamma defendants shall simply admit or deny that they sold goods or services to Iowa residents during the period of time beginning January 1, 2009, and ending November 7, 2011.

*Adm. No. 3:* The Gamma defendants shall admit or deny this request only with regard to the named Gamma defendants (and the websites either of them may own), not with regard to "Affiliates," and only with regard to the period of time beginning January 1, 2009, and ending November 7, 2011.

*Adm. No. 4:* The Gamma defendants shall admit or deny this request only with regard to the named Gamma defendants (and the websites either of them may own), not with regard to "Affiliates," and only with regard to the period of time begin-

ning January 1, 2009, and ending November 7, 2011.

*Adm. No. 5:* The Gamma defendants shall admit or deny this request only with regard to the named Gamma defendants (and the websites either of them may own), not with regard to "Affiliates," and only with regard to the period of time beginning January 1, 2009, and ending November 7, 2011.

*Adm. No. 7:* The Gamma defendants shall admit or deny this request only with regard to the named Gamma defendants (and the websites either of them may own), not with regard to "Affiliates," and only with regard to the period of time beginning January 1, 2009, and ending November 7, 2011.

The Gamma defendants shall serve supplemental discovery responses in accordance with this order on or before **October 19, 2012.**

### Scheduling Issues

During the September 25, 2012, hearing, counsel requested relief from two deadlines: (a) the September 28, 2012, deadline for the parties to submit a proposed scheduling order and discovery plan and (b) the Gamma defendants' October 4, 2012, deadline to move or plead. Because of the issues addressed in this order, the court agrees that both deadlines should be extended. The new deadlines are set forth below.

### CONCLUSION

Based on the foregoing:

1. The Gamma defendants' motion to quash subpoena (Doc. No. 31) is **granted.** Fraserside's subpoena to Google is hereby quashed.

2. Fraserside's motion to compel discovery (Doc. No. 37) is **granted in part** and **denied in part** pursuant to the terms of this order.

3. The Gamma defendants' motion for protective order (Doc. No. 43) is **granted in part and denied in part** pursuant to the terms of this order.

4. The Gamma defendants shall serve supplemental discovery responses and pro-

duce the information specified in this order no later than **October 19, 2012.**

5. The Gamma defendants shall move or plead no later than **October 30, 2012.**

6. The parties shall submit a proposed scheduling order and discovery plan no later than **November 9, 2012.**

**IT IS SO ORDERED.**